RELIANCE MARINE INS. CO., Limited, v. NEW YORK & C. MAIL
S. S. CO. et al.

NEW YORK & C. MAIL S. S. CO. et al. v. RELIANCE MARINE INS. CO.,
Limited.

(Circuit Court of Appeals, Second Circuit.    December 8, 1896.)

1. GENERAL AVERAGE—EFFORTS TO EXTINGUISH FIRE.
    Increased damage by smoke, caused by attempts to extinguish the fire by turning steam into the hold, is no foundation for a general average claim, where there is no means of determining what part of the damage was due to the ordinary action of smoke, and what to the operation of the steam and smoke.    70 Fed. 262, affirmed.

2. SAME—SEPARATION OF INTERESTS—SCUTTLING.
    Where, just before scuttling to extinguish fire, part of the cargo is discharged into lighters, and forwarded by another vessel, the separation may be considered to have been, not merely for the safety of the cargo discharged, but also for the benefit of the ship and the remainder of the cargo, and the cargo so forwarded is chargeable for its proportionate share of the expense of salving the ship and the remainder of the cargo.    70 Fed. 262, affirmed.

Appeal from the District Court of the United States for the Southern District of New York.

The Seneca, an iron vessel 279 feet in length, and belonging to the New York & Cuba Mail Steamship Company, sailed from Havana for New York, on Saturday evening, December 23, 1893, with a cargo consisting mainly of hemp, tobacco, and hides. The vessel has a lower hold, a lower between-decks, and an upper between-decks. A passageway or bunker on each side of the engine room in the upper between-decks extends beyond the engine room, fore and aft, to wooden bulkheads, each of them being about 12 feet from the engine room. They

are not watertight. A door in each swings on hinges from above. Upon this voyage, these passageways were closely stowed with hemp in bales, some of which were compressed, and some were not compressed. Above this hemp were two ventilators, opening upon the deck, each 14 inches in diameter. 1,658 bales of tobacco were stowed in the after upper between-decks. Of these bales, 221, belonging to Mr. Fortier, of Montreal, were stowed against the wooden bulkheads. About 1 o'clock a. m., on December 24th, fire was discovered in the hemp in the lower between-decks. Streams of water were turned from the upper between-decks upon the fire for two or three hours, until the men who were at work near the fire were driven back by the heat and smoke. The hatches upon the upper deck were then battened down, and at 3:20 a. m. the vessel started for Havana, when steam was turned into the lower between-decks through perforated pipes two inches in diameter, at a boiler pressure of 100 pounds to the square inch, for the purpose of deadening the fire, and was continually discharged upon it until about 10:30 a. m., when the ship reached Havana, and the furnace fires were drawn. The efforts of steam fire engines to extinguish the fire by water proved unavailing, and at 5 o'clock p. m. the captain opened the after hatches, discharged as much cargo as possible into lighters, and then scuttled the ship. Fortier's tobacco, with that of other shippers, was sent to New York in other vessels of the steamship company. The Seneca was raised, and went, with the cargo remaining on board, to New York. Upon the arrival of these several portions of the cargo general average bonds were executed, and thereafter an adjustment of general average was made. The adjusters were of opinion that the amount to be made good to Fortier for loss on his tobacco was the sum of $2,987.55, such being the amount of damage by water to 64 bales, the adjusters being satisfied that this water damage was received on the lighters as a necessary consequence of the exposure incident to removal preliminary to scuttling. He was also required to contribute upon the value of his whole shipment, which left him owing $934.57 upon the final statement. The tobacco was sold at auction, and realized, over and above expenses, the sum of $4,393.60, making a net loss of $12,766.64. Upon his policy of insurance he received $8,000, and assigned to the insurers his claim against the other interests in general average. He insisted that the net loss above $2,987.55 was attributable to injury caused to the tobacco by the steam before the ship reached Havana, and that this part of his loss should be allowed in general average. The adjustment also compelled Fortier's tobacco to contribute towards the expenses of raising the submerged ship and cargo. The libel of the insurance company was brought to obtain the difference which would result from a proper adjustment of general average. The libel of the steamship company was brought to compel the payment of the amount found to be due from Fortier by the adjustment as made. The district court dismissed the libel of the insurance company, and decreed in favor of the steamship company. 70 Fed. 262.

Harrington Putnam, for Steamship Co.
William W. McFarland, for Insurance Co.

Before LACOMBE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge (after stating the facts). Two questions arise upon the appeal of the insurance company: First. Did the Fortier tobacco sustain any damage, other than the water damage to 64 bales? Second. If it did, can the damage thus sustained properly be made the subject of contribution in general average?

The first question was sharply contested upon the trial in the district court, and, inasmuch as the respondent contends that there was no damage except as to the 64 bales, it becomes necessary to determine the question, irrespective of the truthfulness of the libelant's theory as to the cause of damage, if any existed. The testimony of witnesses apparently of equal prominence, skill, and experience in the examination of tobacco, is at entire variance upon the subject;

but, upon a careful consideration of the respective statements, we have reached the conclusion that Fortier's bales were, as a whole, damaged by what they call, in varying language, "smoke, heat, and moisture," or "smoke and heat," or saturation with "a smoky flavor," and that the tobacco, which is a plant of peculiar sensitiveness, had absorbed the flavor or odor of smoke, whereby its quality was greatly injured. The cause of the damage was presented by the libelant in a form different from that which was alleged in the libel, and was said to have arisen from the pressure of the steam, which forced its way through the wooden bulkheads, and carried the creosote, contained in the smoke, from the burning hemp to the tobacco stowed beyond the bulkhead; or, as the cause is stated in the answer to the steamship company's libel, by the turning of the steam into the forward part of the vessel "the smoke and steam were forced into the after compartment, and the tobacco damaged, which, but for such action on the part of the captain, would have been uninjured by the smoke and fire." The theory of the scientific expert is that the movable quality of smoke, its permeating and penetrating quality, is necessarily much increased by the steam which absorbed it, and that, the steam having absorbed the products of combustion, and especially acetic acid, penetrated the crevices in its path, and carried with it the contents of the smoke which it had absorbed. We are of opinion that this is a correct theory, and that more damage was caused to the tobacco by the pressure of steam, which carried the smoke or its contents, than would have been caused if no steam had been introduced into the lower between-decks; but we are also of opinion that, in the time during which the fire was in active operation, from 1 o'clock a. m. to 5 o'clock p. m., smoke in substantial quantities found its way, without the aid of steam pressure, to the tobacco, and gave to it an injurious odor, and that, if steam had not been used, no part of the vessel would have been free from the pervasive effects of smoke. It must be recollected that a smouldering fire existed for 16 hours in the cargo of hemp, which could not be extinguished except by sinking the vessel, and that steam was used for 7 hours. It seems impossible that the effect or the consequences resulting from the volumes of smoke which must have risen from the fire should not have permeated everywhere, even if no steam had been used. It is further manifest that it is impossible to tell the amount of damage which was caused by the pressure of the steam, as distinguished from the amount of damage caused by the unaided presence of smoke. The damage to a cargo which was caused by fire or smoke is not allowed in general average. The damage caused by water or by steam, which was introduced as a means of suppressing the fire, is allowed. If it should be held that the loss arising from the two combined causes of injury should be adjusted upon different principles, it must be admitted that the means for acquiring knowledge of the amount of damage due to each cause are most vague and indefinite, because all that can be found is that the steam, which was introduced to smother the fire, and which was probably of benefit, enlarged or spread the deleterious effect of the smoke.

It enlarged a damage which is particular average, and the enlargement was a necessary incident to the means properly employed to extinguish the fire. We have, therefore, in this case, an ordinary and an extraordinary smoke damage; and no one can tell how much is ordinary, and how much extraordinary. Under such circumstances, it is unnecessary to consider what might or might not be a proper rule of adjustment in a case where such ordinary and extraordinary damages were susceptible of separation, and, severally, of exact ascertainment.

The question which arises under the libel of the steamship company is whether the tobacco is liable to contribute in general average to the expenses of raising the ship after the tobacco was placed in lighters; the contention of the insurance company being that, after this removal, there was a complete and final separation of all interests between the ship and the tobacco. Immediately before the ship was scuttled, all the tobacco on board was placed on lighters, which remained alongside of the ship for four days, and was then shipped aboard other vessels for New York. All the cargo in the after between-decks was taken out, except some hides. The general question of liability of cargo to contribute in general average after a separation from the ship, was considered by this court in Pacific Mail S. S. Co. v. New York, H. & R. Min. Co., 20 C. C. A. 349, 74 Fed. 564, wherein it was shown that the tendency of the English decisions is in favor of a strict adherence to the idea that contribution should cease when common danger has ceased, and that they regard danger to the saved cargo as having ceased when it has been taken ashore to a place of safety, but that thus far in this country a more lax rule has prevailed, and it is held that cargo, though actually separated from the imperiled ship, may still, for the purposes of average, be constructively within it. In this case, the master, after having been engaged in a constant series of efforts to quench the fire, found that the vessel must be scuttled to save her and the cargo in the forward part of the ship. It was manifest that he expected to raise the vessel, with that portion of the cargo still on board, and finish the voyage. For the purpose both of saving as much cargo as possible and of diminishing the aggregate loss which the damaged cargo would bear and the expenses of raising the vessel, nearly all the cargo aft was hurriedly put into lighters. The separation may be considered to have been, not merely for the safety of the tobacco, but also for the benefit of both the ship and the rest of the cargo; and, while the English decisions would not compel this part of the cargo to contribute to the subsequent expenses upon the ship, the facts of the case bring these expenses within the general rules stated in McAndrews v. Thatcher, 3 Wall. 347, which, though they were not absolutely necessary to the decision of that case, are deemed to be controlling upon this court.

The decree of the district court in the libel of the insurance company is affirmed, with costs of this court. The decree in the libel of the steamship company is affirmed, with interest, but without costs of this court.